Sometime during the Easter weekend, April 11 and 12, 1998, Peters' Farm Market, located in northern Pickaway County, was broken into and an old safe was removed from the premises. Appellant was arrested in connection with the crime and charged with receiving stolen property valued at more than $500, a fifth degree felony under R.C. 2913.51, and safecracking, a fourth degree felony under R.C. 2911.31. At trial, a jury found appellant guilty of both of these offenses. The trial court sentenced appellant to a term of eight months in prison on the charge of receiving stolen property, and sixteen months in prison on the safecracking charge, to be served consecutively. Appellant appeals the decision and verdicts of the trial court. We affirm the judgment of the trial court.
 STATEMENT OF THE CASE
Robert Peters, owner of Peters' Farm Market, closed his store early Saturday evening, April 11, 1998, the day before Easter. When one of Peters' employees reopened for business early Monday morning, April 13, 1998, she discovered a broken window in the door to the farm market office, and also found another door to the store pried open. The only thing missing from the premises was a small safe, containing two compartments operated by combination dials. Peters kept change stored in strawberry cartons inside the bottom compartment of the safe and a bottle of strychnine in an old coffee can in the top compartment.
Deputy William Crooks and Detective Gary Combs of the Pickaway County Sheriffs Office investigated the break-in. They discovered wheel tracks and footprints outside the office. It appeared that someone had used a two-wheeled dolly from the market to move the safe out of the office and into some weeds behind the market. Another set of tire tracks, from a car or truck, indicated that the safe had been loaded onto a vehicle at this point.
On that same Monday, at about 4:00 p.m., Alan Wheeler, the manager of a trailer park located approximately two miles from the market, saw two men in a black pickup truck back up to the park's row of trash containers. Mr. Wheeler became suspicious when the men removed trash from one of the trash containers, placed a heavy item in the bottom of that trash container, and then took trash from the adjacent trash containers to cover this item. Once the men left, Mr. Wheeler found what looked like a safe in one of these trash containers.
Mr. Wheeler reported his discovery of the safe to the Sheriffs Office. With the aid of the park's backhoe, deputies retrieved the safe from the trash container. The safe was empty, the bottom door was open, and a hole had been cut into the top compartment. Deputy Crooks determined that this safe matched the description of the safe stolen from Peters' Farm Market.
Mr. Wheeler did not recognize either of the two men who dumped the safe into the trash bin. He could not see the pickup truck's back license plate, apparently because a rope wrapped around the truck's bumper blocked his view. However, he did observe two decals on the rear window of the pickup, one a Harley Davidson logo, the other a Jeg's auto supply logo. The next day, Detective Combs found this black pickup truck parked beside a trailer at Lot 279 in the park, but found no one in the trailer that occupied this lot.
Detective Combs questioned Stanley Johnson, who lived at Lot 277 in the park. Johnson told Detective Combs that appellant, who lived at Lot 278, took care of the dogs at Lot 279. Thereafter, Deputy Crooks and Deputy Combs questioned appellant and another trailer park resident, Dave Boots. Detective Combs searched behind park Lots 277 and 278 and found several empty strawberry cartons in a ditch located behind these lots. The deputies arrested appellant and charged him with receiving stolen property and safecracking.
Appellant gave a statement to Deputy Crooks at the Pickaway County Jail, claiming that on Saturday, April 11, 1998, he went fishing in the Scioto River. He also stated that, when he began to drive home, his car became stuck in mud, and he had to walk back to his trailer. Appellant claimed that he was home all day Sunday, April 12. He further stated that early on Monday morning, April 13, he drove his mother's car to the area of the park where the trash containers were located to forage through the trash, whereupon he discovered the safe in one of the trash bins. Appellant claimed that, when he discovered the safe, the bottom compartment was open and empty, but the top compartment was closed and locked. Appellant stated that he returned to the trash container with Stanley Johnson and Dave Boots to retrieve the safe, using Stanley Johnson's pickup truck. Appellant and Stanley Johnson took the safe to a location behind Johnson's trailer, where, according to appellant, Johnson cut the hole in the top of the safe. After finding nothing of consequence in the safe, Johnson decided to keep the safe as a toolbox. Appellant stated that, on that Monday afternoon, he and Dave Boots took his neighbor's truck, the black pickup, to retrieve appellant's car, with Stanley Johnson following in his pickup. After appellant retrieved his car that afternoon, he stated that Johnson decided that he did not want the safe, and asked appellant to get rid of it. Appellant stated that his wife requested that he remove several bags of trash from his trailer that afternoon. He again borrowed his neighbor's black pickup truck, and he enlisted the aid of Dave Boots to load the safe and the trash on the truck, and return the safe to the trash bin.
At trial, the state presented the testimony of Robert Peters, who identified the safe as the one he kept in the office of the market. Peters testified that he had purchased the used Diebold safe several years earlier, for about $200 to $300, through a friend who worked for Diebold Safe. He stated that he intended to patch the recovered safe and continue to use it in his office at the market. The state then presented an expert witness, Jody Johnson, whose family operated a business in Columbus that sold and repaired safes. Appellant objected to this witness, because the state did not supply his name during discovery. The trial court denied his objection and permitted this witness to testify.
Jody Johnson described the safe as a "teller locker," typically used in banks. The metal box contained two compartments, with separate doors and combination locks. The "teller locker" allowed tellers sharing the same bank window to store their cash drawers after their shift, to insure an accurate count at the end of the day. Because of its construction, the "teller locker" was not considered burglarproof and, therefore, was not considered a "safe." Mr. Johnson estimated the replacement cost of such a "teller locker" at $1,000.
Detective Combs and Deputy Crooks also testified for the state. Detective Combs testified that he interviewed appellant at his trailer on Tuesday, April 14, 1998. The appellant initially denied driving the neighbor's truck on Monday, April 13, 1998, and denied any knowledge of the safe found in the trash bin. Eventually, appellant changed his story and claimed to have found the safe in the trash.
Deputy Crooks arrested appellant and transported him to the Pickaway County Jail. Appellant dictated a statement to Deputy Crooks at the jail, which the deputy later read into the record at trial, without objection from the appellant. Deputy Crooks also testified that appellant's car appeared to be muddy, corroborating appellant's story that his car became stuck in mud near the Scioto River.
Detective Combs testimony placed Peters' Farm Market on a likely path between the location where the appellant claimed to have been fishing and the trailer park. During cross examination, appellant's counsel asked Detective Combs whether his theory of the case was that the appellant stole the safe. Detective Combs replied that he believed that appellant and Stanley Johnson had gone fishing in the river that weekend. Detective Combs further testified that it was his belief that, when appellant's car became stuck in the mud, the two men began walking back to the trailer park, and that appellant and Stanley Johnson broke into Peters' Farm Market, discovered the safe, and used the dolly to hide the safe in some weeds behind the market. Detective Combs further stated that he believed appellant and Stanley Johnson later returned to Peters' Farm Market in the neighbor's truck, retrieved the safe, and brought it back to the trailer park, where they cut it open behind Johnson's trailer. Detective Combs opined that the bottom part of the safe, where the change was stored, might have been left unlocked by accident when the market closed Saturday.
The jury returned a verdict of guilty on both charges. Appellant filed his timely appeal, initially raising a single assignment of error [hereinafter Assignment of Error No. 1]:
 1. THE TRIAL COURT ERRED IN ADMITTING THE TESTIMONY OF JODY JOHNSON, WHEN HE WAS NOT DISCLOSED AS A WITNESS IN PRETRIAL DISCOVERY, OR AT LEAST IN CONTINUTNG THE TRIAL TO GIVE THE DEFENSE AN OPPORTUNITY TO PREPARE REBUTTAL TESTIMONY.
After briefing this assignment of error, appellant's trial counsel sought leave to withdraw. After leave was granted for trial counsel to withdraw and new counsel was appointed for the appellant, we permitted appellant to supplement his brief. Appellant's new counsel raised three further errors, [hereinafter Supplemental Assignments of Error Nos. 1, 2, and 3] set forth below:
 Sup. No. 1: THE EVIDENCE IS INSUFFICIENT TO CONVICT APPELLANT OF RECEIVING STOLEN PROPERTY.
 Sup. No. 2: APPELLANT WAS DENIED THE EFFECTIVE ASSISTANCE OF COUNSEL IN VIOLATION OF HIS RIGHTS UNDER THE SIXTH AND FOURTEENTH AMENDMENTS TO THE UNITED STATES CONSTITUTION AND ARTICLE I, SECTION 10 OF THE OHIO CONSTITUTION.
 Sup. No. 3: THE EVIDENCE IS INSUFFICIENT TO CONVICT APPELLANT OF SAFECRACKING.
 OPINION I
In Assignment of Error No. 1, appellant argues that the trial court erred by allowing Jody Johnson to testify for the state. Johnson testified as an expert witness regarding the value of the safe. The state did not include Johnson on its witness list, but it did notify appellant during pretrial discovery that it intended to present expert testimony on the value of the safe. Appellant argues that the trial court should have excluded Johnson's testimony as a sanction for the state's violation of the rules of discovery. Without Johnson's testimony, appellant contends that there is insufficient evidence to convict him of a felony violation of R.C 2913.51, receiving stolen property.
Appellant was convicted of receiving stolen property, in violation of R.C. 2913.51. Generally, receiving stolen property is a first-degree misdemeanor. However, if the value of the property involved is $500 or more, but less than $5,000, receiving stolen property is a fifth degree felony. Therefore, in order to convict appellant of a felony violation of R.C. 2913.51, the state was required to prove the value of the property that appellant allegedly received.
Peters testified that the safe would have contained approximately $50 in change, but he could not establish the value of the safe itself. Johnson, who works for a company that sells new and used safes, testified that it would cost approximately $1,000 to replace the safe that was taken from the farm market with a new safe of similar quality. Under R.C. 2913.61 (D) (2), this testimony was sufficient to establish the value of the safe for purposes of R.C. 2913.51.
The state is required to provide a criminal defendant with the names of all individuals that the state intends to call as witnesses at trial. Crim.R. 16 (B) (1) (e). From the record, we find that the state failed to notify appellant of its intention to call Jody Johnson as an expert witness until the day of trial. Pursuant to Crim.R. 16 (E) (3), appellant requested that the trial court disallow Johnson's testimony as a sanction for the state's failure to name Johnson on its witness list during pre- trial discovery.
The trial court has broad discretion in regulating discovery.State v. Scudder (1994), 71 Ohio St.3d 263, 269, 643 N.E.2d 524,529-530. When a party fails to comply with Crim.R. 16, the trial court may order compliance, grant a continuance, exclude evidence that has not been disclosed, or "make such other order as [the trial court] deems just under the circumstances." Crim.R. 16 (E) (3). When a discovery violation occurs, the trial court should impose the least severe sanction that is consistent with the purposes of the discovery rules. Lakewood v. Papadelis (1987),32 Ohio St.3d 1, 511 N.E.2d 1138. We will not disturb the trial court's choice of remedy absent an abuse of discretion. State v.Apanovitch (1987), 33 Ohio St.3d 19, 26, 514 N.E.2d 394, 402.
When the state fails to disclose the name of a witness, the trial court does not abuse its discretion by admitting the testimony of the witness if:
1. The state's failure to disclose the witness was not willful;
2. Foreknowledge of the witness would not have aided preparation of the defense; and
3. The defendant was not unfairly prejudiced by the admission of the evidence. State v. Heinish (1990), 50 Ohio St.3d 231,236, 553 N.E.2d 1026, 1032, citing State v. Parson
(1983), 6 Ohio St.3d 442, 445-446, 453 N.E.2d 689,692.
Appellant concedes that the state's failure to disclose Johnson as a witness was not willful. However, he argues that foreknowledge of the Johnson's testimony would have aided his defense by allowing him time to present his own expert on the issue of valuation. Johnson's testimony elevated the receiving stolen property offense from a misdemeanor to a felony by providing the only evidence that the value of the property involved was $500 or greater. Appellant was unable to rebut the state's evidence on valuation; and, therefore, he argues that he was unfairly prejudiced by the admission of Johnson's testimony.
As the state argues, when a discovery violation occurs, the trial court should impose the least severe sanction that is consistent with the purposes of the rules of discovery.Papadelis, supra. When the state notified appellant just before trial that it intended to call Johnson as an expert witness, appellant could have requested a continuance or another, less severe sanction for the state's failure to disclose Johnson during discovery. Instead, appellant requested that the trial court impose the most severe sanction available by excluding Johnson's testimony. In the absence of a motion for a continuance, we find that the trial court did not abuse its discretion by refusing to strike Johnson's testimony. See Statev. Edwards (1976), 49 Ohio St.2d 31, 43, 358 N.E.2d 1051, 1060, vacated on other grounds sub nom. Edwards v. Ohio (1978),483 U.S. 911, 57 L.Ed.2d 1155, 98 S.Ct. 3147.
Accordingly, appellant's Assignment of Error No. 1 is OVERRULED.
 II
Appellant's Supplemental Assignment of Error No. 1 questioned the sufficiency of the State's evidence, arguing that the evidence presented at trial is insufficient to support his conviction for receiving stolen property, in violation of R.C.2913.51. A conviction under R.C. 2913.51 requires that the state prove beyond a reasonable doubt that the defendant received property "knowing or having reasonable cause to believe that the property [had] been obtained through commission of a theft offense." R.C. 2913.51 (A). Appellant disputes neither that he was in possession of this safe, nor that the safe was stolen from Peters' Farm Market. Rather, appellant argues that the state failed to establish beyond a reasonable doubt that he "knew or had reasonable cause to believe" that the safe was stolen property, or had been acquired through the commission of a theft offense.
When we consider a claim that the evidence is insufficient to support conviction, our inquiry must focus upon whether the evidence could reasonably support a finding of guilt beyond a reasonable doubt. Sufficiency of the evidence refers to the legal standard by which the court determines whether to submit the case to the jury, or whether the evidence supports the jury's verdict as a matter of law. State v. Smith (1997), 80 Ohio St.3d 89, 113,684 N.E.2d 668, 691. "In essence, sufficiency is a test of adequacy. Whether the evidence is legally sufficient to sustain a verdict is a question of law." State v. Thompkins (1997), 78 Ohio St.3d 380,386, 678 N.E.2d 541, 546. We are not to weigh the evidence, but are to merely determine whether the evidence supports the jury's conclusion. "The relevant inquiry is whether, after viewing the evidence in a light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt." State v. Jenks (1991), 61 Ohio St.3d 259, 574 N.E.2d 492, paragraph two of the syllabus.
The court in State v. Davis (1988), 49 Ohio App.3d 109,550 N.E.2d 966, identified five factors that are relevant in determining whether a defendant knew, or should have known that property has been stolen. These factors include:
1. The defendant's explanation for possessing the merchandise;
2. The nature of the merchandise;
3. The frequency with which such merchandise is stolen;
4. The nature of the defendant's commercial activities; and
5. The time between the theft and the recovery of the merchandise.
Id. at 112, 550 N.E.2d at 968 (citations omitted).
Appellant argues that he routinely salvaged items from the trailer park's trash containers, referring specifically to a color TV he found in one of the trash bins. Appellant's wife testified that appellant would look for salvage "once in a great while," and also referred to the color TV that appellant allegedly found there. Appellant offered no other testimony to confirm that he found the safe while foraging in the trash, as he asserted at trial.
Dave Boots, called as a witness for the appellant, failed to corroborate appellant's story that the two of them retrieved the safe from the trash. Boots testified that he first saw the safe when appellant sought his help that Monday afternoon to dump some trash. Alan Wheeler, the State's witness, acknowledged that some of the park residents regularly foraged in these trash containers. He did not, however, recognize appellant as one of the regular salvagers.
Appellant argues that the State failed to establish that he had reason to believe the safe was stolen. A safe, he argues, is not typical of the consumer goods normally stolen. The safe had no markings to indicate its origin. It was old and rusty, and, appellant claimed, contained nothing more than the strawberry cartons and some other trash, consistent with an abandoned item. Finally, appellant cites the proximity of the trailer park to the market, to imply that the unknown thief or thieves, who removed the safe from Peters' Farm Market, found the park's trash container a convenient place to abandon the safe, and apparently did so.
Applying the Davis factors, we find it reasonable for the jury to have doubted appellant's explanation for his possession of the safe. While a safe may not be as commonly stolen as some consumer items because of its weight, even an old, rusty safe may contain items of great value, rewarding the thief who is able to haul it away and force it open. Appellant originally denied to the deputies that he knew anything about the safe, but later claimed that he thought the safe had been abandoned in the trash. He then admitted that he and Stanley Johnson took the safe behind Johnson's trailer and that they drilled holes in the top to gain entry into the locked compartment.
From the photographs of the safe admitted into evidence it is apparent that considerable effort was required to cut a hole in the top of the safe. To a reasonable person, the strawberry cartons, hidden in a ditch behind Stanley Johnson's trailer, would indicate that either appellant, or Stanley Johnson, opened the bottom compartment at the park. When appellant disposed of the safe, he attempted to conceal the safe under loose trash in the trash bin.
We find the jury's verdict supported by the factors set forth in Davis. A locked safe is not an item normally found in the trash. Although the safe may have been old and rusty, a reasonable person could conclude the safe was stolen property. Appellant's activities in trying to force open the safe indicated that he believed the safe contained valuables, and was not abandoned property. Appellant attempted to conceal the safe in the trash and denied knowledge of the safe to the investigating deputies. His unexplained possession of the safe soon after the break-in supports the conclusion that he knew the safe was stolen property.
The weight given the evidence and the credibility of the witnesses are matters primarily for the trier of fact. State v.DeHass (1967), 10 Ohio St.2d 230, 227 N.E.2d 212, paragraph one of the syllabus. It is well settled that an inference of guilty knowledge may be drawn from the fact of unexplained possession of stolen goods. State v. Arthur (1975), 42 Ohio St.2d 67, 69,325 N.E.2d 888, 889. It is also well settled that circumstantial evidence inherently possesses the same probative value as direct evidence. Jenks, supra, at paragraph one of the syllabus. The evidence presented below, if believed, could convince the average person that appellant knew or should have known that the safe had been obtained by the commission of a theft offense.
Accordingly, appellant's Supplemental Assignment of Error No. 1 is OVERRULED.
 III
Appellant, in his Supplemental Assignment of Error No. 2, argues that he was denied effective assistance of trial counsel. We disagree.
Appellant must satisfy the two-part test set forth inStrickland v. Washington (1984), 466 U.S. 668, 80 L.Ed.2d 674,104 S.Ct. 2052 to prevail on this issue. First, appellant must show that counsel's representation fell below an objective standard of reasonableness. Second, appellant must show a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different when considering the totality of the evidence that was before the court. To establish prejudice, a defendant must show that "there exists a reasonable probability that, were it not for counsel's errors, the result of the trial would have been different." Statev. Bradley (1989), 42 Ohio St.3d 136, 538 N.E.2d 373, paragraph three of the syllabus. A properly licensed attorney is presumed competent. State v. Hamblin (1988), 37 Ohio St.3d 153,524 N.E.2d 476. Furthermore, "the defendant must overcome the presumption that, under the circumstances, the challenged action "might be considered sound trial strategy.' Strickland, 466 U.S. at 689,104 S.Ct. at 2065 (citation omitted). Thus, the tactics of trial counsel, even if debatable, generally do not constitute lack of effective assistance of counsel. State v. Clayton (1980), 62 Ohio St.2d 45,49, 402 N.E.2d 1189, 1192.
Appellant alleges that a single error by trial counsel prejudiced his case and deprived him of effective representation. Trial counsel asked Detective Gary Combs to explain his theory of the investigation. Detective Combs, as we have outlined above, explained that he believed appellant and Stanley Johnson carried out the breaking and entering of the market, and the theft of the safe.
A review of the record clearly indicates two possible strategies employed by trial counsel. Appellee suggests that trial counsel was merely attempting to impeach the investigating officer by establishing that his theory of the case was flawed. A review of the record indicates another possible trial theory.
Appellant's trial counsel asked Detective Combs several questions which indicated that counsel believed that the Sheriffs Office had a list of felons, residents of the park, who could have stolen the safe from Peters' Farm Market. This line of questioning buttressed appellant's argument that the safe was abandoned, with the additional inference that the safe had been dumped in the trash by an unknown thief or thieves. Trial counsel also inquired of Detective Combs why the Sheriffs Office did not gather fingerprint evidence at the site of the break-in to Peters' Farm Market. If defense counsel had persuaded the jury to accept appellant's explanation for his possession of the safe, counsel might also have persuaded the jury that the deputies bungled the investigation of the break-in. Hence, counsel might have persuaded the jury to believe that the Sheriffs Office was using appellant as a scapegoat, having no evidence to support charges against any other suspects.
Appellant also raises the issue that Detective Combs' answer improperly placed evidence of "other acts" before the jury. Admission of evidence of other crimes, whether due to trial counsel's negligence, ignorance, or disregard of the defendant's rights, may constitute ineffective assistance of counsel when the other crimes are unrelated to any legitimate trial strategy.State v. Martin (1987), 37 Ohio App.3d 213, 214, 525 N.E.2d 521,522-523. Therefore, appellant claims further denial of effective assistance of counsel when his attorney failed to follow his unfortunate question with a request for a jury instruction, or a limiting instruction from the trial court after Detective Combs answered. See State v. Dotson (Apr. 28, 1992), Franklin App. No. 9lAP-999, unreported.
Even if we assume that trial counsel's failure to request a limiting instruction was unreasonable for purposes of an ineffective assistance of counsel claim, we fail to see how this prejudiced appellant. The state charged appellant with receiving stolen property and safecracking. To convict the appellant of receiving stolen property, the jury must be convinced that the appellant either knew or had reason to know that the safe was stolen property. To support a conviction of safecracking, the state must convince the jury that appellant violated R.C. 2911.31
(A), which states that:
 No person, with purpose to commit an offense, shall knowingly enter, force an entrance into, or tamper with any vault, safe, or strongbox.
The totality of the evidence presented supports appellant's conviction on both charges. Both charges necessarily rest upon the presumption that the appellant knew the safe was stolen property, and that he assumed something of value was contained therein. Appellant, by both his statements and his actions, lent support to the conclusion that he was involved in a criminal enterprise. Trial counsel's alleged inept questioning of Detective Combs did not provide a new path for the jury to reach this conclusion. The evidence produced by the state had already paved a broad enough highway to allow the jury to reasonably reach a guilty verdict on both charges.
We find that appellant has failed to demonstrate a reasonable probability that, but for his attorney's negligence, the jury would have acquitted him of the charges. Hence, we conclude that the appellant failed to meet the second prong of the Strickland
test.
Accordingly, we OVERRULE appellant's Supplement Assignment of Error No. 2.
 IV
In his Supplemental Assignment of Error No. 3, appellant argues that the evidence presented at trial is insufficient to support his conviction for safecracking, in violation of R.C.2911.31. Appellant again advances his claim that he found the safe in the trash, that the bottom compartment was open and contained nothing of value, and that he and Stanley Johnson cut a hole in the stop out of curiosity. While appellant does not dispute that he forced an entry into the top, locked compartment, he argues that the State failed to establish that he did so with the intent to commit a criminal offense.
The safecracking statute, R.C. 2911.31 (A), provides as follows:
 No person, with purpose to commit an offense, shall knowingly enter, force an entrance into, or tamper with any vault, safe, or strongbox.
Essentially the crime of safecracking requires that two elements be proven: that the accused tampered, entered, or forced entry to a vault, safe or strongbox, and that the accused did this with the intent to commit any offense.
Appellant does not dispute that he forced entry of the safe, but he does dispute that the state produced sufficient evidence of his criminal intent to enter into or tamper with the safe to support his conviction. It is not necessary to establish that the appellant intended to steal the contents of the safe, so long as the appellant has the "purpose to commit an offense." State v.Snowden (1976), 49 Ohio App.2d 7, 359 N.E.2d 87.
State v. Jenks, supra, establishes that circumstantial evidence may be sufficient to support a criminal conviction. The trier of fact may determine the intent of the accused from the facts and circumstances present in a particular case. State v.Seiber (1990), 56 Ohio St.3d 4, 13, 564 N.E.2d 408, 419.
The record in this case supports the conclusion that appellant had purpose to commit an offense. Contrary to appellant's assertions, the record does not establish that the bottom compartment of the safe was empty of anything of value, or even unlocked. Robert Peters testified that his normal practice was to keep about $50 in change in strawberry boxes in this compartment. Detective Combs found the bottom compartment unlocked and assumed the compartment was unlocked at the time the safe was stolen from Peters' Farm Market. However, Detective Combs also found the empty strawberry boxes hidden in a ditch behind Stanley Johnson's trailer. Hence, a reasonable person might conclude that appellant opened the bottom compartment of the safe, removed the strawberry boxes and money from the safe's bottom compartment, while in Stanley Johnson's back yard, and disposed of the strawberry boxes in the nearby ditch.
Even if we accept appellant's theory, that an unknown thief or thieves abandoned the safe at the trailer park, the evidence presented below nonetheless is sufficient to support the jury's verdict of guilty on the safecracking charge. Robert Peters testified that this bottom compartment was difficult to open. If the bottom compartment contained nothing more than these strawberry cartons, why conceal these cartons in the ditch? Reasonable minds could also conclude that the unlocked door might still require some force or finesse to open, a task performed in Stanley Johnson's backyard by the appellant.
Going one step further, assuming that the bottom compartment of the safe was open and empty of anything of value, cutting into the locked top compartment still supports the presumption of criminal intent needed for conviction of safecracking. We found above that the evidence presented by the state supported appellant's conviction for receiving stolen property. It is not credible to believe a locked safe found at a trailer park is abandoned property. It is just as incredible to believe the appellant and Stanley Johnson would make the effort to cut through the steel top of the safe without some hope of ill-gotten gains. Indeed, mere tampering with a safe, without entry, is sufficient evidence of intent to commit a crime to support a conviction for safecracking. See State v. Welch (Aug. 20, 1998), Franklin App. No. 97APA 10-1311, unreported.
Because appellant attacked the sufficiency of the evidence to support his conviction, we are not required to reweigh the evidence, or evaluate the credibility of the witnesses. Neither are we required to believe the state's theory of the case, so long as, if it was believed, there is sufficient evidence to support conviction. Thompkins, supra. It is necessary for us to find the essential elements of the crime proven beyond a reasonable doubt. Jenks, supra. We find sufficient evidence to support a finding that appellant intended to commit a criminal offense when he entered the metal strongbox taken from Peters' Farm Market. The evidence presented supports his conviction for a violation of R.C. 2911.31 (A), safecracking.
Accordingly, we OVERRULE appellant's final assignment of error and AFFIRM the judgment of the trial court.
 JUDGMENT ENTRY
It is ordered that the judgment be affirmed and that appellee recover of appellant costs herein taxed.
The Court finds that there were reasonable grounds for this appeal.
It is ordered that a special mandate issue out of this court directing the Pickaway County Court of Common Pleas to carry this judgment into execution.
A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure. Exceptions.
Abele, J., and Kline, P.J.: Concur in Judgment and Opinion.
_______________________ David T. Evans, Judge